UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
BARBARA PASTERNACK, on behalf of
Herself and all others similarly situation

**09 Civ. 5579 (SHS)**

                                     *Plaintiff,*

          *-against-*

MAXIM GROUP, LLC,

                                     *Defendant.*
--------------------------------------------------------------------------X

WECHSLER & COHEN, LLP
Todd A. Gutfleisch, Esq.
*Attorneys for Plaintiff*
17 State Street, 15th Floor
New York, New York 10004
(212) 847-7900

# TABLE OF CONTENTS

Table of Authorities...............................................................................................iii

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................................2

      I.Procedural History ..........................................................................................................2

      II.Summary of the Settlement Terms .................................................................................4

CLASS ACTION SETTLEMENT PROCEDURE ...................................................................6

ARGUMENT...........................................................................................................................7

      I. The Proposed Settlement Should Be Approved .............................................................7

A.   The Proposed Settlement Class Satisfies the Requirements of Rule 23...................7

B.   Plaintiffs Have Met All of the Prerequisites Under Rule 23(a).........................8
      i. Numerosity Is Satisfied.....................................................................................8
      ii. Commonality Is Satisfied.................................................................................8
      iii. Typicality Is Satisfied .....................................................................................9
      iv.Adequacy Is Satisfied .....................................................................................9

C.   The Court Should Certify The Settlement Class Under Rule 23(b)(3)...............9

D. The Proposed Settlement Is Fair, Reasonable, And Adequate.........................10

      i. Procedural Fairness..........................................................................................10
      ii. Substantive Fairness ......................................................................................11

          a. The Complexity, Expense, And Likely Duration Of The Litigation........11
          b. The Reaction Of The Class To The Settlement..........................................12
          c. The Stage Of The Proceedings And The Amount Of Discovery
          Completed ....................................................................................................12
          d. The Risks Of Establishing Liability ..........................................................13
          e. The Risks of Establishing Damages ...........................................................13
          f. The Risks Of Maintaining The Class Action Through The Trial .............14
          g.The Ability Of Defendants To Withstand A Greater Judgment................14
          h.The Range Of Reasonableness Of The Settlement Fund  In
          Light Of The Best Possible Recovery And The Attendant Risks Of
          Litigation .....................................................................................................15

E. The Notice To Class Members Meets The Requirements Of Rule 23 .......................16

F. Service Payments Should Be Awarded To The Class Representatives ...................... 16

G. Class Counsel's Attorneys' Fees Should Be Approved ............................................... 19

      i. Class Counsel's Requested Fee Award Is Reasonable ...................................... 21
      ii. The Goldberger Factors .................................................................................. 22
          a. Counsel's Time And Labor ........................................................................ 23
          b. The Litigation's Magnitude And Complexity ........................................... 23
          c. The Risks Of Litigation ............................................................................ 24
          d. Quality Of The Representation ................................................................. 24
          e. Public Policy Considerations .................................................................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. Time Moving & Storage, Inc.,* 2010 WL 322882 (E.D.N.Y. Jan. 28, 2010).................................................................................................................22

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)....................10

*Ayers v. SGS Control Svcs., Inc.*, 03 Civ. 9078, 06 Civ. 7111, 2008 WL 4185813 (S.D.N.Y. Sept. 9, 2008)...............................................................................22

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) ................9

*Banyai v. Mazur, 00 Civ. 9806 (SHS)*, 2008 WL 4921351 (S.D.N.Y. Nov. 18, 2008) .................................................................................................................12

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ................................................................................................22

*Bricker v. Planey Hollywood New York, L.P.*, 08 Civ. 443, 2009 WL. 2603149 (S.D.N.Y. Aug. 13, 2009) ..............................................................................22

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007) ......................................................21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ........................................11

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ....................8

*DAmato v. Watman*, 236 F.3d 78 (2d Cir. 2001) ...........................................................7, 10

*D.S. v. N.Y. City Department of Education*, 255 F.R.D. 59 (E.D.N.Y. 2008)..............14, 15

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ..................................23

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) ..........................................8

*EVCI Career College Holding Corp. Sec. Litigation*, No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...............................................21, 22

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)...2, 10, 11, 15, 17, 19, 21

*Ganzero v. Bensusan Restaurant Group*, No. 07 Civ. 05940 (S.D.N.Y. Feb. 25, 2009) .................................................................................................................19

*Germain v. County of Suffolk*, -- F.Supp.2d --,  2009 WL 4546671 (E.D.N.Y. Dec. 5, 2009)................................................................................................23

*Gilliam v. Addicts Rehabilitation Ctr. Fund*, 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................................12, 19, 22, 23

*In re Global Crossing Sec. & ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004)......... 23

*Glover v. Crestwood Lake Section I Holding Corp.*, 89 Civ. 5386, 1991 WL 64172 (S.D.N.Y. Apr. 10, 1991)..................................................................14

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)................20, 21, 22

*Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 19, 2005) (internal citation omitted).......................................10, 20, 21

*Imbeault v. Rick's Cabaret Int'l, Inc.*, 08 Civ. 5458, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) .............................................................................................22

*In re Janney Montgomery Scott LLC*, 06 Civ. 3202 (BMS) ...............................................18

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)....11, 12, 14, 15, 21

*Mohney v. Shelly's Prime Steak, et al.*, 06 Civ. 4270 (PAC) ............................................18

*Nilsen v. York Cty.*, 382 F. Supp. 2d 206 (D. Me. 2005) .....................................................18

*In re Nortel Networks Corp. Sec. Litigation*, 539 F.3d 129 (2d Cir. 2008).......................21

*In re Painewebber Ltd. P'ships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997).............13, 14

*RMED Intl v. Sloan's Supermarkets*, 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003)....................................................................................................19

*Robinson v. Metropolitan N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ...............9

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y.2008) ...............................................23

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 94 Civ. 0403 (JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002).............................................................................19

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ..............................17

*In re Sony SXRD Rear Projection Television Class Action Litigation*, 2008 WL 1956267(S.D.N.Y. May 1, 2008) ................................................................................12, 15

*Spann v. AOL Time Warner, Inc.*, 02 Civ. 8283, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)............................................................................................................22

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................20

*Taft v. Ackerman*, 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)....8, 9, 10, 22

*Teachers Ret. Sys. v. A.C.L.N., Ltd.,* 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y, May 14, 2004)...........................................................................................................15

*In re Telik, Inc. Sec. Litigation*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......7, 13, 19, 20, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)10, 11, 13, 16, 20, 22

*Warren v. Xerox Corp.*, 01 Civ. 2909, 2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008)........................................................................................................................21

## INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiff Barbara Pasternack ("Pasternack"), individually and on behalf of others similarly situated, applies to this Court for final approval of a proposed settlement in this wage and hour class and collective action (the "Action"). The Action was brought on behalf of certain employees of Defendant Maxim Group LLC ("Defendant" or "Maxim"). This settlement will resolve all claims brought before this Court in this action pursuant to the proposed Settlement Agreement and Release ("Agreement" or "Settlement Agreement"). The Settlement Class is defined as

> all Maxim employees employed as Brokers or Broker Trainees at any time from June 17, 2003 through October 16, 2009

On November 16, 2009, the Court preliminarily approved the proposed settlement as being fair, just, reasonable, and in the best interests of the Settlement Class. In so approving, the Court preliminarily certified the Settlement Class and found that for purposes of the settlement the Settlement Class met the requirements for class certification under Fed. R. Civ. P. 23. The Court also found that the Settlement Notice proposed in the Agreement constituted valid, due, and sufficient notice to Class Members.

Pursuant to the November 16, 2009 Court Order, the Settlement Notice was mailed to 415 putative Class Members on or about December 14, 2009.[1] Class Members had sixty (60) days after the mailing of Notice to opt-in or opt-out of the class action. Two hundred and forty eight (248) Settlement Class Members submitted claims. Four (4) Settlement Class Members opted-out of the class. (Gutfleisch Aff. ¶ 48).

---

[1] Due to a language error which indicated that the total estimated settlement payment was the payment for each week worked at Maxim, a clarifying letter was sent to all Class Members on December 21, 2009.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.   Procedural History

Plaintiffs allege that they are entitled to back wages for: (i) work performed for which they received no compensation; (ii) overtime work for which they did not receive overtime premium; and (iii) unlawful deductions pursuant to New York Labor Law § 193.

The Plaintiffs are former and current brokers and broker trainees of Maxim. The parties engaged in substantial discovery and litigation before agreeing to resolve this case. (Gutfleisch Aff. ¶¶ 12-30.) The proceedings in this Action moved quickly and for a several month period were all consuming. (Gutfleisch Aff. ¶ 12). Following the filing of the Action on June 17, 2009, there was a Motion for Collective Action Certification; letters and/or briefs sent to the Court concerning interference with class members and tolling of the statute of limitations; and a hearing before the Court. (Gutfleisch Aff. ¶ 12). Indeed, the initial conference in this action was moved up due to the flurry of activity in the Action. (Gutfleisch Aff. ¶ 12)

Kevin Cannon ("Cannon") opted-in and became a plaintiff in this action on July 14, 2009 and quickly became immersed in the action along with Pasternack. (Gutfleisch Aff. ¶ 13). Cannon and Pasternack were both long-time brokers for Maxim and spoke to many Maxim brokers and former brokers about the action, leading to a number of former Maxim employees to opt-in to the Action (and many more to call Plaintiffs' counsel to discuss the merits and the personal and reputational risk to them if they joined the Action). (Gutfleisch Aff. ¶ 13). In response, a senior executive at Maxim called Cannon on July 10, 2009. (Gutfleisch Aff. ¶ 14). Cannon alleged that this Maxim executive harassed him and attempted to coerce him into withdrawing from the Action. (Gutfleisch Aff. ¶ 14). Plaintiffs' counsel immediately wrote to counsel for Maxim, Proskauer Rose LLP ("Proskauer Rose"), demanding that such actions cease.

(Gutfleisch Aff. ¶ 14). Plaintiffs moved for emergency relief from this Court on July 13, 2009, seeking injunctive relief against Maxim. (Gutfleisch Aff. ¶ 15). A teleconference was held before the Court on July 14, 2009, concerning Maxim's alleged conduct and the relief sought by Plaintiffs. The Court granted Plaintiffs some of the provisional relief sought. (Gutfleisch Aff. ¶ 16). Plaintiffs moved for Collective Action Certification on July 14, 2009. (Gutfleisch Aff. ¶ 17). Pasternack and the opt-in Plaintiffs helped to prepare the Motion by helping counsel understand Maxim's payroll practices. (Gutfleisch Aff. ¶ 18). Each of the Plaintiffs – Pasternack, Cannon, Donna Desideri, Krishna Darooka, Sidney Oliphant, Valence Williams, and David Perez – spoke to and/or met with counsel at length about payroll practices at Maxim. (Gutfleisch Aff. ¶ 18).

Due to the accelerated nature of the Action, the workload on the law firms involved was significant. (Gutfleisch Aff. ¶ 19). Proskauer Rose assigned two skilled partners to litigate this action, in addition to assigning associates to work on the Action. (Gutfleisch Aff. ¶ 19). On July 21, 2009, Proskauer Rose wrote to the Court requesting that Plaintiffs' motion to certify the collective action be held in "abeyance" until the August 13, 2009 initial conference that had been scheduled during the July 14, 2009 conference with the Court. (Gutfleisch Aff. ¶ 20). On July 23, 2009, Plaintiffs opposed Maxim's request to hold the motion to certify the collective action in abeyance. (Gutfleisch Aff. ¶ 21). On July 24, 2009, this Court granted Maxim's request to hold the motion to certify the collective action in abeyance. (Gutfleisch Aff. ¶ 22). However, the Court also moved the initial conference to July 30, 2009. (Gutfleisch Aff. ¶ 22).

During the initial conference, the Court granted Maxim's request for expedited discovery, ordered Plaintiffs to produce certain documents, and scheduled depositions of three Plaintiffs – Pasternack, Cannon and Darooka. (Gutfleisch Aff. ¶ 23). Plaintiffs moved by letter brief on

August 3, 2009 for an order tolling the statute of limitations for all Maxim brokers and broker trainees who might opt-in to the Action. Maxim, of course, opposed the motion. (Gutfleisch Aff. ¶ 24). Also during the period, the parties explored resolution. Maxim provided Plaintiffs with information concerning broker and broker trainees, including compensation earned for each year by each broker or broker trainee for the period beginning in 2003. (Gutfleisch Aff. ¶ 25). Plaintiffs worked through this data, compiling such information as weeks worked during the applicable statute of limitations periods and determining average compensation earned by brokers and broker-trainees. (Gutfleisch Aff. ¶ 25). Pasternack, Cannon and Darooka also produced documents. (Gutfleisch Aff. ¶ 26). Maxim deposed Pasternack on August 18, 2009; Cannon on August 18 and 21, 2009; and Darooka on August 21, 2009. (Gutfleisch Aff. ¶ 27).

Following Darooka's deposition, the parties engaged in substantial settlement negotiations. (Gutfleisch Aff. ¶ 28). Maxim's Chairman, Michael Rabinowitz ("Rabinowtiz"), and its Vice Chairman and General Counsel, Edward Rose ("Rose"), were present during all depositions and the negotiations. (Gutfleisch Aff. ¶ 28). During the settlement negotiations, Rose advised Plaintiffs' counsel of the legal costs to date of the Action. Rose disclosed that in the two months the Action had been going on, Maxim had incurred over $300,000 in legal fees. (Gutfleisch Aff. ¶ 29).

On August 25, 2009, the parties agreed to settle this action for $910,000 (the "Settlement Amount"). (Gutfleisch Aff. ¶ 30). The Settlement Amount is to be distributed to all brokers and broker-trainees who participate. There is no reversion to Maxim. (Gutfleisch Aff. ¶ 30).

## II.  **SUMMARY OF THE SETTLEMENT TERMS**

The Settlement Agreement creates a fund of $910,000 to settle this case ("the Fund") (Gutfleisch Aff. ¶ 33). The Fund covers attorneys' fees and costs, class members' awards,

interest, service payments, and administration fees and costs. (Gutfleisch Aff. ¶ 34). Unlike many cases, the Fund shall be fully distributed to Class Members who make claims. (Gutfleisch Aff. ¶ 35).

The Settlement Agreement provides that every class member who does not timely opt-out of the settlement will release his or her FLSA and NYLL wage and hour claims. (Gutfleisch Aff. ¶ 36). The Class consists of all Maxim employees employed as Brokers or Broker Trainees for more than 60 business days at any time from June 17, 2003 through October 16, 2009 (the "Class Period"). (Gutfleisch Aff. ¶ 37). The FLSA class members and the Rule 23 class members who do not opt-out of the settlement will be paid pursuant to an allocation formula based on the number of pay periods they worked. (Gutfleisch Aff. ¶ 38).

Consistent with the Settlement Agreement, Plaintiffs' counsel applies for attorneys' fees of $300,000. (Gutfleisch Aff. ¶ 39). This is less than one-third of the Settlement Fund. Pursuant to the agreement between Wechsler & Cohen, LLP ("W&C") and Pasternack, W&C is entitled to one-third of the Settlement Fund. (Gutfleisch Aff. ¶ 39). W&C also seeks reimbursement for its actual out of pocket litigation costs and expenses from the Fund. Pursuant to the Settlement Agreement, these expenses were not to exceed $5,000. (Gutfleisch Aff. ¶ 40). Counsel has incurred $1,183.89 in expenses.

Under the Settlement Agreement, in addition to her individualized award under the allocation formula, and subject to Court approval, Pasternack applies to receive an additional payment of $20,000. (Gutfleisch Aff. ¶ 42). Pasternack put her name and herself at substantial risk by being the named plaintiff in the Action; and has no known conflict with any class member. (Gutfleisch Aff. ¶ 42).

In addition to their individualized award under the allocation formula, and subject to Court approval, the following persons apply to receive additional awards as follows: (i) Cannon - $20,000; (ii) Darooka - $5,000; (iii) Desideri - $2,500; (iv) Sidney Oliphant - $1,000; (v) Valence Williams - $1,000; and (vi) David Perez - $1,000. (Gutfleisch Aff. ¶ 43). Cannon was deposed over two days (travelling at his own expense) provided documents to Maxim, and was instrumental in providing counsel with information instrumental in developing a litigation strategy. (Gutfleisch Aff. ¶ 44). In addition, Cannon alleges he was subject to harassment by Maxim, and took great personal and professional risk in carrying forward in this Action. (Gutfleisch Aff. ¶ 44). Darooka was also deposed, and provided documents and information helpful to developing the strategy in this Action. (Gutfleisch Aff. ¶ 45). Desideri was the lead opt-in broker-trainee and worked with counsel in explaining Maxim's payroll practices related to broker trainees. (Gutfleisch Aff. ¶ 45). Oliphant, Williams and Perez also opted-in to the Action early, at great personal and professional reputational risk, and helped counsel in understanding Maxim's payroll practices. (Gutfleisch Aff. ¶ 46).

The Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notices") were sent to the 415 Settlement Class Members on December 14, 2009. (Gutfleisch Aff. ¶ 48). Two hundred and forty eight (248) Settlement Class Members submitted claims. Four (4) Settlement Class Members opted-out of the class. (Gutfleisch Aff. ¶ 48).

## CLASS ACTION SETTLEMENT PROCEDURE

Judicial proceedings have established a defined procedure and specific criteria for settlement approval in class action settlements, which includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

2. Dissemination of mailed and/or published notice of settlement to all affected

Class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* generally Fed. R. Civ. P. 23(e). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

This Court took the first step by granting preliminary approval on November 16, 2009. Notices were disseminated on December 14, 2009. With this motion, Plaintiffs request that the Court take the final step - granting final settlement approval of the Settlement Agreement.

## ARGUMENT

## I.    The Proposed Settlement Should Be Approved

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *See also DAmato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).

Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted). The Second Circuit has stated that "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974).

### A.   The Proposed Settlement Class Satisfies the Requirements of Rule 23

Prior to granting final approval of a settlement, a district court determines whether a proposed settlement class meets the requirements of Rule 23 and should be certified. *In re Telik,*

*Inc. Sec. Litik*, 576 F. Supp. 2d at 581-82. Under Rule 23, a class maybe certified if there is: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and where one of the Rule 23(b) requirements is met.[2] *Taft v. Ackerman*, 02 Civ. 7951(PKL), 2007 WL 414493, at *3 (S.D.N.Y. Jan. 31, 2007). Here, the proposed class meets the numerosity, commonality, typicality, and adequacy standards, as well as Rule 23(b)(3)'s requirement that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## B. Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

### i. Numerosity Is Satisfied

Numerosity is presumed satisfied where there are at least forty class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As the Class in this case includes over 400 people, it is so numerous that joinder of all Class Members is impracticable.

### ii. Commonality Is Satisfied

"The commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Here, the claims of the Class all revolve around the same questions of law and fact regarding whether they are entitled to back wages for: (i) work performed for which they received no compensation; (ii) overtime work for which they did not receive overtime premium; and (iii) unlawful deductions pursuant to New York Labor Law § 193.

---

[2] Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

### iii. Typicality Is Satisfied

The typicality requirement is satisfied here because the claims "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Taft v. Ackermans*, 2007 WL 414493, at *3. Moreover, the claims of the proposed Class Members rely on "similar legal arguments" that Maxim failed to compensate them properly. *Robinson v. Metro N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).

### iv.     Adequacy Is Satisfied

Adequacy is satisfied where "1) Plaintiff's interests are [not] antagonistic to the interests of other members of the class and 2) Plaintiffs attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, Pasternack is more than an adequate representative of the proposed class and has fairly and adequately represented and protected the interests of all Class Members in achieving this settlement. Pasternack has no known conflict with any Class Members. (Gutfleisch Aff. ¶ 42.) In addition, W&C has substantial experience prosecuting and settling employment actions and employment class actions, including wage and hour class actions; and W&C's lawyer assigned to this matter is well-versed in wage and hour law and in class action law and is well-qualified to represent the interests of the class. (Gutfleisch Aff. ¶¶ 2-6.)

Accordingly, Pasternack and W&C meet the adequacy requirement of Rule 23.

## C.     The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3). The above-described common questions of law and fact predominate over any individual issues such as the nature and extent of

damages. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impracticable. Moreover, as damages suffered by individual members of the Settlement Class are relatively small compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class Members to individually redress the harm done to them. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005); *Taft*, 2007 WL 414493, at *11; *Ansoumana*, 201 F.R.D. at 89.

### D.    The Proposed Settlement Is Fair, Reasonable, And Adequate

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that lead to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Since this settlement was negotiated prior to class certification, "it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85.

#### i. Procedural Fairness

A presumption of fairness arises where a class action settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted). Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

Here, the attorneys are experienced attorneys. The parties engaged in extensive, arm's-

length negotiations after thoroughly investigating the claims. Accordingly, the settlement is entitled to a presumption of fairness and adequacy.

### ii. Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v, Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

See also *Wal-Mart Stores, Inc.*, 396 F.3d at 117. These factors ought not be applied in a formulaic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)),

### a. The Complexity, Expense, And Likely Duration Of The Litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank*, 228 F.R.D. at 184-85 (internal quotation omitted). If this case continues, there will be significant costs that will deplete any recovery, including numerous depositions, further document production and review, trial, and possible appeals. Moreover, there is likely to be significant motion practice. For example, Maxim will oppose Plaintiffs motion for conditional

collective certification of the FLSA claims. The parties will presumably move for summary judgment to narrow the issues. This will result in significant costs and delay in the resolution of this case. *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008) (noting that motion practice is costly and delays resolution of a case).

### b. The Reaction Of The Class To The Settlement

In evaluating class members' support for a settlement, courts look to the proportion of the class that formally objects to the settlement and the proportion of class members who opt out. Where relatively few class members opt-out or object to the settlement, that response supports court approval of the settlement. In re *Sony SXRD Rear Projection Television Class Action Litig.*, 06 Civ 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008). This factor weighs heavily in favor of approving the proposed settlement. Of the four hundred and fifteen (415) class notices that were mailed, two hundred and forty eight (248) class members sought to opt-in and only four (4) class members opted-out. (Gutfleisch Aff. ¶ 49.) There are no objectors to date. This demonstrates Class Members' satisfaction with the settlement terms. *See Banyai v. Mazur*, 00 Civ. 9806 (SHS), 2008 WL 4921351, at * (S.D.N.Y. Nov. 18, 2008) ("The fact that the Class as a whole appears to have reacted favorably to the proposed settlement weighs heavily in favor of its approval.")

### c. The Stage Of The Proceedings And The Amount Of Discovery Completed

Courts also consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. Parties need not have engaged in extensive discovery for a settlement to be approved. *Maley*, 186 F. Supp. 2d at 363. Instead, courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms." *In re Sony SXRD*

*Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *7. The settlement was reached with a thorough understanding of the case.

### d. The Risks Of Establishing Liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Maxim asserted legal and factual defenses to the underlying claims in this lawsuit. There are numerous disputed issues of fact that make establishing liability risky. While Plaintiffs are confident that they would succeed at trial, Maxim raised significant legal arguments regarding unresolved issues of law and factual arguments that, if credited, could have eliminated any recovery for Plaintiffs. In addition, juries are unpredictable. The proposed Settlement is therefore preferable to costly, protracted litigation, which may result in a smaller or non-existent per-plaintiff recovery.

### e. The Risks of Establishing Damages

Courts also consider the risks of establishing damages. Regardless of plaintiffs' ability to establish liability, they still face "substantial risks in proving its damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); see also *Wal-Mart Stores, Inc.*, 396 F2d at 119.

Plaintiffs may have difficulty establishing the full extent of class-wide damages at trial. Some of Plaintiffs' claims are not reflected in Maxim's records and would have to be established through testimony and reference to other documents. Therefore, the value of Plaintiffs' claims could be significantly impacted by the jury's assessment of Plaintiffs' credibility and/or the

reasonableness of Maxim's explanations. Moreover, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd..P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### f. The Risks Of Maintaining The Class Action Through The Trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, 255 F.R.D. 59, at *79 (E.D.N.Y. 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, 89 Civ. 5386 (MJL), 1991 WL 64172, at *6 (S.D.N.Y. Apr. 10, 1991). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Glover*, 1991 WL 64172, at *6. If the proposed Settlement Agreement is not approved, Plaintiffs will move for class certification of the state claims. They have already moved for conditional collective certification of the FLSA claims. These motions will be time-consuming and costly, and Maxim will oppose them. Although Plaintiff believes that the Court would ultimately approve class and conditional collective certification, there is a possibility that certification would not be granted or that the classes would later be decertified.

### g. The Ability Of Defendants To Withstand A Greater Judgment

Next, courts consider a defendant's ability to withstand a judgment greater than the settlement. *D. S.*, 255 F.R.D. 59, at *78. Nevertheless, the fact that a defendant can withstand a greater judgment does not preclude a finding that the settlement was fair, reasonable, and adequate. *Id.* Maxim is a retail broker. In light of current economic conditions, it is unlikely

Maxim could sustain a large judgment.

**h.      The Range Of Reasonableness Of The Settlement Fund  In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation**

The final two *Grinnell* factors can be considered together.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8.  "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the relief offered in settlement.'"  *D.S.*, 255 F.R.D. at *78 (quoting *Grinnell*, 495 F.2d at 455).  The determination of the "best possible recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment."  *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement.  "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with regard to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Frank*, 228 F.R.D. at 186 (internal quotations and citations omitted).

These factors weigh in favor of approval of the settlement. As discussed above, Plaintiffs face substantial risks in proving and collecting their best possible recovery.  Moreover, the Settlement provides the significant benefit of an immediate substantial recovery for Class Members, rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers Ret. Sys. v. A.C.L.N.*, Ltd., 01 Civ. 11814 (MP), 2004 WL 1087261, at *5 (S.D.N.Y, May 14, 2004).

### E. The Notice To Class Members Meets The Requirements Of Rule 23

When a court certifies a class under Rule 23(b)(3), the court must direct class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23 (c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (internal quotation omitted).

The Class Notice mailed to all Class Members plainly and concisely provided the necessary information regarding the lawsuit and class certification pursuant to Rule 23(c)(2)(B). The Notice also described (1) the terms of the settlement; (2) each Class Member's recovery; (3) the relief available to Settlement Class Members; (4) the date, time, and place of the Fairness Hearing; (5) the procedures for objecting to the settlement and appearing at the Fairness Hearing; (6) the service awards being sought; (7) the attorneys' fees being sought; and (8) contact information for the settlement administrator, W&C and Proskauer Rose.

### F. Service Payments Should Be Awarded To The Class Representatives

Under the proposed Settlement Agreement, and subject to the Court's approval, separate payments are to be awarded in the following amounts: (i) Pasternack - $20,000; (ii) Cannon -

$20,000; (ii) Darooka - $5,000; (iii) Desideri - $2,500; (iv) Oliphant - $1,000; (v) Williams - $1,000; and (vi) Perez - $1,000. Pasternack was the original named plaintiff and placed herself at substantial risk. Cannon and Desideri became parties to this action on July 14, 2008. Darooka became a party on July 17, 2009. Oliphant, Williams and Perez became parties to this action on July 21, July 24 and August 12, 2009 respectively. See Gutfleisch Aff. ¶ 46, Exhibit A annexed thereto.

> A court has may grant service awards in a class action. In doing so, a court considers:

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the clam, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted). Moreover, service "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." Id. See also *Silberblatt v. Morgan Stanley*, 524 F.Supp.2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving additional payment, less others be dissuaded.")

Pasternack, Cannon, Darooka, Desideri, Oliphant, Williams and Perez expended considerable time and effort to assist W&C with the case. They were instrumental to the initiation and investigation of the case. They spent time reviewing documents, explaining the relevant and necessary factual information to W&C, and evaluating Defendant's defenses. Gutfleisch Aff. ¶ 18. While most service awards are granted to originally named plaintiffs, the true test is the efforts put forth by the person for whom a service award is sought. See, e.g.,

*Nilsen v. York Cty.*, 382 F.Supp.2d 206, 215 (D. Me. 2005)("The plaintiffs' lawyers propose incentive payments of $6,500 to Michele Nilsen, the first class representative; $5,500 to class representative Charles Neville; $5,000 to class representative Michael Goodrich; and $500 to each class member who was deposed. These proposed payments are fair, reasonable and adequate to compensate the class representatives and deponents for their valuable efforts on behalf of the class.")[3] Indeed, in FLSA collective actions, where individuals affirmatively opt-in, and thus become involved, courts grant service awards to those recognized as having provided service in pursuing the action. For example, in *Mohney v. Shelly's Prime Steak, et al.*, 06 Civ. 4270 (PAC) (S.D.N.Y. March 31, 2009), Judge Crotty not only awarded a service award to the original plaintiff in the action, David Mohney (the only person appearing in the caption), but also permitted service awards for thirteen (13) additional plaintiffs. A copy of the Mohney Final Order is annexed to the Gutfleisch Aff. as Ex. D.

Here, each of these plaintiffs put themselves at personal risk. The securities industry is a small industry and each has risked his or her professional reputation. Cannon was specifically subject to intimidation by his former manager at Maxim. That action alone could have chilled his resolve to continue, and the resolve of others to continue. Pasternack, Cannon and Darooka provided personal documents – their personal phone records among other things – to their former employer. They were forced to sit through depositions. Without all of this work, a settlement would not have been reached. The $20,000 awards for Pasternack and Cannon are the same as similarly situated class representatives in other broker cases. *See In re Janney Montgomery Scott*

---

[3] In addition to the above factors generally considered in Rule 23 class actions, it is also noted that pursuant to the FLSA, a plaintiff is only entitled to damages for the period beginning three years prior to s/he becoming a plaintiff in the action. Because they took the affirmative step, in the event of an eventual award, Pasternack, Cannon, Darooka, Desideri, Oliphant, Williams and Perez would have been entitled to larger awards in the FLSA portion of the action than other persons who chose to opt-in to the FLSA case because their statute of limitations period would have been tolled from an earlier date (as the Court will recall, Class Counsel sought to protect these potential collective action members by moving to toll the FLSA statute of limitations for this very reason).

*LLC*, 06 Civ. 3202 (BMS) at ¶ 19 (E.D. Pa. July 16, 2009) (approving service award of $20,000).

A copy of the Janney Montgomery Final Order is annexed to the Gutfleisch Aff. as Ex. E.

The service payments totaling $50,500 is extremely modest in comparison with those approved by other courts, and represents approximately 5.2% of the Settlement Fund.[4] Because of their time, assistance, development of the case, and being subject to - at the very least - fear of retaliation, the payments to Pasternack, Cannon, Darooka, Desideri, Oliphant, Williams and Perez are appropriate and justified as part of the overall Settlement.

### G. Class Counsel's Attorneys' Fees Should Be Approved

Under the Settlement Agreement (as well as the engagement agreements signed by the named plaintiffs), Class Counsel is permitted to receive one-third of the Settlement Amount as attorneys' fees. Class Counsel is requesting 32.97% of the Settlement Amount.

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik Inc. Sec, Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

---

[4] See, e.g., Gilliam, 2008 WL 782596 (awarding incentive payments totaling 3.67% of $450,000 settlement); *Salus v. Tse Group, LLC*, 07 Civ 03142 (S.D.N.Y. April 3, 2008) (approving incentive payments totaling 5.6% of $375,000 settlement for four plaintiffs); *Ganzero v. Bensusan Rest. Group*, No. 07 Civ. 05940 (S.D.N.Y. Feb. 25, 2009) (approving incentive awards totaling 4.69% of $64,000 settlement to four plaintiffs); Frank, 228 F.R.D. at 187-88 (awarding an incentive payment of 8.42% of $125,000 settlement to one individual); *RMED Intl v. Sloan's Supermarkets*, 94 Civ. 5587 (PKL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (approving an incentive award of 2.56% of $975,000 settlement for a single named plaintiff); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 94 Civ 0403 (JG), 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (approving total incentive award 2.65% of $4,500,000 settlement for six named plaintiffs).

The Second Circuit permits a district court to calculate reasonable attorneys' fees by either the lodestar or percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* at 47. Once that calculation is complete, the district court has discretion to "increase the lodestar by applying a multiplier based on `other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* Under the percentage method, the district court "sets some percentage of the recovery as a fee. In determining what percentage to award, courts look to the same `less objective' factors that are used to determine the multiplier for the lodestar." Id. (internal citation omitted). Under either method, the fee must be "reasonable," and "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.* Although both the lodestar and percentage methods are permissible,

> [t]he trend in the Second Circuit recently has been to use the percentage method. The percentage method, though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition.

*Hicks*, 2005 WL 2757792, at *8 (internal citation omitted); see also *Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 586. Moreover, "the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

Nevertheless, even where the percentage method is used, "the lodestar remains useful as a baseline[,]" and the Second Circuit "encourage[s] the practice of requiring documentation of

hours as a `cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007).

### i.  Class Counsel's Requested Fee Award Is Reasonable

Pursuant to the proposed Settlement Agreement, Class Counsel seeks an award of 32.97% for attorneys' fees and costs. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (recognizing that the fee agreed upon by lead plaintiffs may "offer the best indication of a market rate"). The percentage of the fund sought is consistent with the norms of class litigation in this circuit. *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming district court's award of attorneys' fees and costs equal to 30% of a $42.5 million settlement fund); *Warren v. Xerox Corp.*, 01 Civ. 2909 (JG), 2008 WL 4371367, at *7 (E.D.N.Y. Sept. 19, 2008) (awarding 33.33% of a $12 million settlement fund for fees and costs); *Frank*, 228 F.R.D. at 189 (awarding 40% of a $125,000 settlement fund for fees, costs, and expenses); *Maley*, 186 F. Supp. 2d at 370, 374 (awarding fees of 33.33% of the $11.5 million settlement fund and recognizing that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

In order to prevent plaintiffs' attorneys from receiving a windfall, "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases[.]" *Hicks*, 2005 WL 2757792, at *9. Unlike a class settlement of hundreds of millions of dollars, 32.97% award of attorneys' fees in this case would not be a windfall to W&C.

W&C invested over $136,000 worth of time in obtaining a fair settlement for the Class. W&C now seeks 32.97% of the settlement fund, or $300,000, in attorneys' fees. This amounts to a 2.21 multiplier of the lodestar (and practically a 2 multiplier as W&C has spent

additional time in preparing this motion and will further appear in Court). When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft*, 2007 WL 414493. *See also, e.g., Gilliam*, 2008 WL 782596 (awarding fees of 33.33% of the settlement fund ($450,000) plus costs); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding fees of 30% of settlement fund ($65,870,000)); *Spann v. AOL Time Warner, Inc.*, 02 Civ. 8283 (DLC), 2005 WL 1330937, at *13 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of 33-1/3% of settlement fund ($2.9 million) plus costs and expenses).[5]

In the Second Circuit, courts routinely approve lodestar multiples between 3 and 5. *Wal-Mart Stores, Inc.*, 396 F.3d at 123; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 590; *EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *17 n.7. The multiplier of 2.21 that W&C seeks is reasonable.

### ii. The Goldberger Factors

Whether the percentage or lodestar method is used, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ... ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d at 50 (internal quotation omitted; alteration in

---

[5] At the November 6, 2009 conference, this Court asked that we provide a "smattering" of attorney fee awards in the Second Circuit, not just the high awards. In response, we did the following search in the "FED2-ALL" directory of Westlaw: "da(aft 2007) and "rule 23" and lodestar and flsa." Four cases came up: *Alleyne v. Time Moving & Storage, Inc.*, --- F.R.D. ---, 08 Civ. 1356 (ENV)(SMG), 2010 WL 322882 (E.D.N.Y. Jan. 28, 2010) (awarding fees of 33-1/3% of settlement fund ($180,000)); *Imbeault v. Rick's Cabaret Int'l, Inc.*, 08 Civ. 5458(GEL), 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) (not responsive to request); *Bricker v. Planey Hollywood New York, L.P.*, 08 Civ. 443(WHP), 2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) (awarding 25% of the settlement fund to cover attorney's fees and costs); *Ayers v. SGS Control Svcs., Inc.*, 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2008 WL 4185813, at *7 (S.D.N.Y. Sept. 9, 2008)("the Court finds, for the reasons that follow, that 19% of the $7,250,000.00 Settlement Fund or $1,377,500.00 is a fair and reasonable")

original).

### a.    Counsel's Time And Labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. W&C moved for collective action certification, made unique motions (such as the motions seeking protection of class members and the motion seeking to stay the statute of limitations), responded to discovery requests, interviewed numerous Class Members, prepared for and defended depositions, analyzed extensive wage and payroll records to determine the extent of damages, engaged in detailed conversations with Maxim's counsel about the substance and value of the case, and spent hours negotiating in an attempt to reach a resolution. In their representation of the class, W&C expended over 250 attorney and paralegal hours. Gutfleisch Aff. ¶ 41.[6] W&C also has ongoing duties in administering the settlement, which will require additional professional time. W&C has kept expenses and attorney hours relatively low by litigating this action in an efficient and cost effective manger. See *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (supporting counsel's efforts to "minimize unnecessary duplication of work").

### b.    The Litigation's Magnitude And Complexity

There is an inherent complexity in pursuing any class action. With over 400 Class Members, this class is comparable to many other large wage and hour class actions. See, e.g., *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) (270 class members); *Gilliam*, 2008 WL 782596, at *1 (245 class members). In this particular case, this litigation was made

---

[6] Class counsel's rate of $600 per hour for partners, $350 per hour for associates and $95 per hour for paralegals are comparable to other employment lawyers in New York City with like experience. *See, e.g. Germain v. County of Suffolk*, --- F.Supp.2d ---, 2009 WL 4546671 (E.D.N.Y. Dec. 5, 2009)(reducing Janice Goodman, Esq.'s hourly rate of $600 per hour to $450 per hour because the location of the case was Suffolk County, where a lower rate prevailed.); *Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 546 (S.D.N.Y.2008) (awarding an experienced employment attorney a fee award of $600 per hour).

even more complex due to the Department of Labor's Opinion Letter dated November 27, 2006, that provides that under certain conditions, retail stock brokers may meet the standards of the executive exemption of the FLSA. DOL Opinion Letter 2006-43. Nevertheless, counsel, being a former defense counsel, understood the limits of the Department of Labor's Opinion Letter.

### c. The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 WL 414493, at *10 (internal quotation omitted); see also *In re Global Crossing*, 225 F.R.D. at 467 (noting that "[t]he contingent nature of Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees"). W&C took this case pursuant to a retainer agreement with Pasternack which stated that Counsel would receive one third of the recovery only if Plaintiffs obtained a recovery. Had Plaintiffs not obtained a recovery, W&C would have received no payment for their work.

### d. Quality Of The Representation

W&C has extensive experience in wage and hour class actions and civil rights actions. Gutfleisch Aff.¶¶ 2-6. W&C used their experience to obtain an excellent result for the class. See *In re Priceline.com*, 3:00 Civ. 1884 (AVC), 2007 WL 2115592, at *5 ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). "The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Defendants are represented by lead lawyers Lawrence Sandak and Steve Hurd of Proskauer Rose, both extremely experienced and skilled employment law litigators.

### e.    Public Policy Considerations

Both the FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley*, 186 F. Supp. 2d at 374; *cf Hicks*, 2005 WL 2757792, at *9. Moreover, given the relatively small recoveries of individual class members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court (1) grant final approval of the class action settlement; (2) certify the settlement class; (3) award Class Counsel attorneys' fees; and (4) approve the service awards requested.

Dated:    New York, New York
          February 19, 2010

                              WECHSLER & COHEN LLP


                              Todd A. Gutfleisch, Esq.
                              Attorneys for Plaintiffs
                              17 State Street, 15th Floor
                              New York, New York 10004
                              212 847-7900